# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LATOYA A. HAYES,<br><br>*Plaintiff,*<br><br>vs.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of the Social<br>Security Administration,<br><br>*Defendant.* | Case No. 13-2521-EFM |

## MEMORANDUM AND ORDER

Plaintiff Latoya A. Hayes seeks review of a final decision by Defendant, the Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income benefits under Title XVI of the Social Security Act (the "Act") as amended. In her pleadings, Plaintiff alleges multiple assignments of error, including the administrative law judge's ("ALJ's") finding that Plaintiff did not meet or medically equal a listed impairment, that only partial weight should be assigned to the opinion of one of Plaintiff's treating physicians, and that Plaintiff could perform work that exists in the national economy. Upon review, the Court finds that the Commissioner's decision was supported by substantial evidence in the record. As such, the decision of the Commissioner is affirmed.

### I.      Factual and Procedural Background

Plaintiff was born on August 19, 1987. She is single with four children aged seven, six, three, and two. She and her children live with her mother. Plaintiff attended special education classes through the twelfth grade and has a high school diploma. She has no prior work history.

On April 26, 2011, Plaintiff filed an application for supplemental security income based on limited mental functioning and a learning disability. Plaintiff's application was denied initially and upon reconsideration. On January 30, 2013, Administrative Law Judge Janice Barnes-Williams conducted a hearing at which Plaintiff and her counsel appeared. During the hearing, Plaintiff testified that she takes care of her children daily and performs household chores such as cooking, sweeping, washing dishes, and taking out the trash, but that her mother does the laundry and helps her children with their homework. She further testified that she is able to keep herself and her children groomed. A vocational expert also testified at the hearing, responding to the ALJ's questions about whether a hypothetical individual with certain limitations representative of Plaintiff's limitations would be able to work. The vocational expert testified that such an individual could work.

On May 13, 2013, the ALJ issued her decision, finding that Plaintiff suffered from the severe impairments of major depressive disorder, borderline intellectual functioning, a learning disability, and mild mental retardation. Despite these findings, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. More specifically, the ALJ determined that Plaintiff failed to meet Listing 12.04, which describes anxiety related disorders, and Listing 12.05, which describes intellectual disabilities. The ALJ concluded that Plaintiff retained the residual functional capacity to perform a full range of work at all exertional levels

with the following nonexertional limitations: (1) occupations that do not require written communication or math skills; (2) only simple, routine, repetitive tasks in a work environment free of fast-paced production requirements; (3) simple, work-related decisions, with few, if any, workplace changes; (4) no public interaction; and (5) only occasional interaction with co-workers. The ALJ therefore concluded that Plaintiff had not been under a disability since April 26, 2011, the alleged onset date, through the date of her decision.

Given this unfavorable result, Plaintiff sought reconsideration of the ALJ's decision from the Appeals Council. The Appeals Council denied Plaintiff's request for review, and thus, the ALJ's decision became the final decision of the Commissioner. On October 8, 2013, Plaintiff filed a Complaint in the United States District Court, District of Kansas seeking reversal of the ALJ's decision and the immediate award of benefits or, in the alternative, a remand to the Commissioner for further consideration. Because Plaintiff has exhausted all of her administrative remedies, her claim is now ripe for review before this Court.

## II.     Legal Standard

Judicial review of the Commissioner's decision is guided by the Social Security Act which provides, in part, that the "findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."[1] The court must therefore determine whether the factual findings of the Commissioner are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard.[2] "Substantial evidence is more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might

---

[1] 42 U.S.C. § 405(g).

[2] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

accept to support the conclusion."[3] The court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]."[4]

An individual is under a disability only if she can "establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months."[5] This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience."[6]

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.[7] The steps are designed to be followed in order. If it is determined at any step of the evaluation process that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary.[8]

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those severe impairments meets or equals a designated list of

---

[3] *Barkley v. Astrue*, 2010 WL 3001753, at *1 (D. Kan. Jul. 28, 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).

[4] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.3d 799, 800 (10th Cir. 1991)).

[5] *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306–07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)).

[6] *Barkley*, 2010 WL 3001753, at *2 (citing *Barnhart v. Walton*, 535 U.S. 212, 217–22 (2002)).

[7] *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. § 416.920(a).

[8] *Barkley*, 2010 WL 3001753 at *2.

impairments.[9] If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's RFC, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from her impairments."[10]

Upon assessing the claimant's RFC, the Commissioner moves on to steps four and five, which require the Commissioner to determine whether the claimant can either perform her past relevant work or whether she can generally perform other work that exists in the national economy, respectively.[11] The claimant bears the burden in steps one through four to prove a disability that prevents performance of her past relevant work.[12] The burden then shifts to the Commissioner at step five to show that, despite her alleged impairments, the claimant could perform other work in the national economy.[13]

### III.   Analysis

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. Specifically, Plaintiff contends that the ALJ erred in (1) determining that Plaintiff did not have an impairment that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (2) giving only partial weight to the opinion of Plaintiff's treating psychiatrist; and (3) finding that Plaintiff could perform work that exists in significant numbers in the national economy. The Court will address each of these arguments below.

---

[9] *Lax*, 489 F.3d at 1084; *see also Barkley*, 2010 WL 3001753, at *2 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).

[10] *Barkley*, 2010 WL 3001753 at *2; *see also* 20 C.F.R. §§ 416.920(e) and 416.945.

[11] *Barkley*, 2010 WL 3001753 at *2 (citing *Williams*, 844 F.2d at 751).

[12] *Lax*, 489 F.3d at 1084.

[13] *Id*.

### A. Listed Impairment of Mental Retardation.[14]

Plaintiff argues that the ALJ erred in not finding her disabled at step three under the listing for "mental retardation," found at 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05. Section 12.00A states in part:

> Listing 12.05 contains an introductory paragraph with the diagnostic description for intellectual disability [mental retardation]. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing.[15]

Listing 12.05 provides:

> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this order is met when the requirements in A, B, C, or D are satisfied.
>
> . . . .
> B. A valid verbal, performance, or full scale IQ of 59 or less; OR
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of functioning.[16]

Plaintiff has the burden at step three to demonstrate through medical evidence that her impairments meet all the criteria in the listing.[17] However, to meet the requirements of Listing

---

[14] In August 2013, the term "mental retardation" was changed to "intellectual disability" in Listing 12.05, but the Court uses the term used by the parties. *See* Change in Terminology: "Mental Retardation" to "Intellectual Disability," 78 Fed. Reg. 46,499.

[15] 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00A.

[16] 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05.

[17] *Riddle v. Halter*, 10 F. App'x. 665, 667 (10th Cir. 2001) (citing *Sullivan v. Zebely*, 493 U.S. 521, 530 (1990)).

12.05B and 12.05C, the Plaintiff must first meet the requirements of the introductory language. This requires Plaintiff to prove that she has "significantly subaverage general intellectual functioning with deficits in adaptive functioning and that this initially manifested before age 22."[18]

In her decision, the ALJ found that Plaintiff did not have the requisite deficit in adaptive functioning to meet the requirements of § 12.05. Plaintiff argues that this finding is not supported by substantial evidence in the record. The Court disagrees. A loss in adaptive functioning is manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, and pace.[19] Here, Plaintiff testified that she worked in high school as a janitor and packager. Plaintiff reported that she had adequate relations with others on her jobs and had no difficulty performing them. She also had adequate relations with her teachers and peers while in school. Plaintiff testified that she cared for her four children with no help from her caseworker, performed household tasks, and cooked meals. This is sufficient evidence to support the ALJ's finding that Plaintiff did not have the requisite deficits in adaptive functioning.

Plaintiff claims that her testimony stating that she did not have any difficulty caring for her children could be attributed to her fear of having her children taken away from her. She also claims that the ALJ erred in relying on Plaintiff's own observations about her abilities because that presumed Plaintiff could offer reliable insight into her own condition and needs. These arguments, however, are not supported by the record, which shows that Plaintiff's insight was

---

[18] *Bradely v. Astrue*, 2012 WL 5878612, at *3 (D. Kan. Nov. 21, 2012) (citing 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.00D(6)(c), 12.05).

[19] 20 C.F.R pt. 404, subpt. P, app. 1, § 12.05.

deemed "fair" and "within normal limits."[20] Thus, the ALJ reasonably found that Plaintiff did not have deficits in adaptive functioning and did not meet or equal the requirements of Listing 12.05B or 12.05C.

### B. Evaluation of Medical Opinions

Plaintiff argues that the ALJ erred in giving only partial weight to Dr. Day's opinion. On January 29, 2013, Dr. Day opined that since April 2011, Plaintiff could work for only one to two hours each day. He reported that she could have little to no public contact and that she had comprehension difficulty and required continued support. He also reported that side effects from Plaintiff's medications would hinder her performance at a work site or in a training class.

The ALJ must give "controlling weight" to the treating physician's opinion, provided that opinion is well-supported not inconsistent with substantial evidence in the record.[21] Even if a treating opinion is not given controlling weight, it is still entitled to deference, and the ALJ must weigh the opinion using the following factors: (1) length of treatment relationship and frequency of examination; (2) nature and extent of the treatment relationship; (3) degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist; and (6) any other factors brought to the ALJ's opinion that support or contradict the opinion.[22] After considering the factors, the ALJ "must 'give good reasons in [the] notice of determination or decision' for the

---

[20] *See* The Wyandot Center Progress Note, Doc. 4-1, p. 271; June 2, 2011, Report by Dr. Day, Doc. 4-1, p. 276; The Wyandot Center Progress Note, Doc. 4-1, p. 298.

[21] *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (citing SSR 96-2p, 1996 WL 374188, at *2).

[22] *Id.* (citing SSR 96-2p, 1996 WL 374188, at *4; *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)).

weight he ultimately assigns the opinion."[23] Finally, if the ALJ rejects the opinion completely, he must give "specific, legitimate reasons" for doing so.[24]

Here, the ALJ gave Dr. Day's opinion only partial weight. He noted that while some of Dr. Day's limitations were supported by the record—those related to difficulties with comprehension and public contact—others were completely unsupported by the record.[25] The ALJ stated that Plaintiff did not report having any side effects from her anti-depressant medication and that she continued to take the medication. The ALJ also noted that nothing in the record reflected that Plaintiff may work only one to two hours per day. The ALJ specifically stated that the fact that Plaintiff watches her children all day, every day, is inconsistent with this limitation.

The Court finds that the ALJ properly assessed Dr. Day's opinion. Dr. Day's limitations regarding the side effects from Plaintiff's medication and Plaintiff's ability to work only one to two hours per day are not consistent with substantial evidence in the record. Although Dr. Day's records indicate that Plaintiff had occasional headaches with her medication, Plaintiff reported that these headaches were relieved when she took over-the-counter medicine. There are no other medical records indicating that Plaintiff experienced any side effects from her medication. In addition, as the ALJ noted, Plaintiff testified that she took daily care of her young children. Therefore, the record supports the ALJ's finding that Dr. Day's opinion is not entitled to

---

[23] *Id.* (quoting 20 C.F.R. § 404.1527(d)(2)); *see also* 20 C.F.R. § 416.927(d)(2).

[24] *Id.* (citing *Miller v. Chater*, 99 F.3d 972, 976 (10th Cir. 1996)).

[25] In giving Dr. Day's opinion only partial weight, the ALJ also noted that Dr. Day's assessment of Plaintiff's limitations was made before her application for supplemental security income benefits was filed. This is not the case. Dr. Day's assessment is dated January 28, 2013, and Plaintiff filed her application on April 26, 2011. Because, however, the ALJ articulated additional, legitimate reasons as to why she did not give Dr. Day's opinion controlling weight, the Court does not consider this error worthy of remand.

controlling weight.  Furthermore, the Court finds that the ALJ fulfilled her duty in analyzing Dr. Day's opinion by specifically stating what weight she gave it and articulating adequate reasons for her decision.

Plaintiff also argues that the ALJ erred in giving more weight to the state agency psychologist's opinion than to Plaintiff's treating psychiatrist and case worker.  In her decision, the ALJ gave "significant weight" to the opinions of Dr. Lauren Cohen, a consultative psychologist, Dr. Charles Fantz, the state agency psychologist, and Dr. Lieberman, a consultative psychologist, because "they are consistent with objective findings on the consultative psychological evaluation and the claimant's daily living activities, all of which demonstrate an ability to perform at least simple, routine, repetitive tasks."[26]  The Court finds that the ALJ's decision to give these opinions significant weight is supported by substantial evidence in the record.  The consultative report and Plaintiff's daily activities show that Plaintiff takes daily care of her young children and is able to perform simple household chores, prepare simple meals, and needs no assistance with grooming and bathing.  Furthermore, "[i]n appropriate circumstances, opinions from State Agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources."[27]  Therefore, the Court finds that ALJ did not err in giving more weight to the state agency psychologist's opinion than to Plaintiff's treating psychiatrist and case worker.

---

[26] ALJ Decision, Doc. 401, p. 19.

[27] SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996); *see also Kizer ex rel. Kizer v. Barnhart*, 2006 WL 681115, at *4 (D. Kan. Mar. 14, 2006) (upholding the ALJ's giving of substantial weight to the opinion of a state agency reviewing psychologist, quoting SSR 96-6p).

### C. Vocational Expert's Testimony

Plaintiff argues that the ALJ did not meet her burden at step five to show that Plaintiff could perform work in the national economy. The Commissioner may satisfy her burden at step five through the testimony of a vocational expert.[28] Such testimony, in the form of a response to a hypothetical question posed by the ALJ constitutes substantial evidence supporting the Commissioner's decision.[29] The hypothetical question must include a full description of the claimant's impairments, but a claimed impairment that is found to be not credible or otherwise not supported by substantial evidence need not be included in the hypothetical.[30]

Here, the ALJ's hypothetical asked the vocational expert to consider an individual with Plaintiff's "age, education, and work experience" who (1) "has no exertional limitations," (2) "would be limited to occupations that do not require written communication, occupations that do not require math skills," (3) "would also be limited to simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements, involving only simple work-related decisions with few, if any, workplace changes," and (4) "could work around coworkers throughout the day but with only occasional interaction with coworkers."[31] Plaintiff argues that this hypothetical is insufficient because at the time of the hearing, the record contained evidence that she suffered from borderline intellectual functioning and her school records reflected IQ scores in the mentally retarded range. The Court disagrees. The ALJ reasonably found that Plaintiff's alleged limitations resulting from her deficits in mental functioning were not

---

[28] *See* 20 C.F.R. § 416.966(e).

[29] *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991).

[30] *Wiley v. Chater*, 967 F. Supp. 446, 452 (D. Kan. 1997) (citation omitted).

[31] Oral Hearing Transcript, Doc. 4-1, pp. 47–49.

supported by substantial evidence in the record. As previously discussed, the ALJ's determination that Plaintiff's adaptive functioning is higher than what her IQ scores indicate is supported by substantial evidence in the record. The ALJ noted that Plaintiff takes daily care of her four children and performs household chores, including cooking, sweeping, washing dishes, and taking trash out, suggesting that she is more mentally capable than she alleges. The ALJ also noted that Plaintiff worked for as a janitor and packager in high school, and more recently, in a thrift store. While Plaintiff's five months of work in the thrift store does not qualify as substantial gainful activity, the fact that Plaintiff worked for this period of time indicates some ability to perform work. Accordingly, the Court finds that the ALJ's hypothetical to the vocational expert sufficiently included all of Plaintiff's physical and mental impairments. The ALJ justifiably relied on the vocational expert's testimony as substantial evidence in finding Plaintiff not disabled.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is **AFFIRMED**.

**IT IS SO ORDERED**.

Dated this 20th day of November, 2014.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE